UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI ANN WEISS,

       Plaintiff,

v.                                        Case No. 1:09-cv-1019
                                        Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                  /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on May 2, 1957 (AR 129).[1] She completed the 12th grade (AR 149). Plaintiff alleged a disability onset date of August 1, 1999 (AR 129). She had previous employment as a custodian (janitor/cleaner) (AR 144). Plaintiff identified her disabling conditions as a back injury. which limits her ability to work because she cannot sit for long periods of time, bend twist or walk (AR 144). On February 19, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-17).[2] This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff also filed an application for Supplemental Security Income (SSI) on October 20, 2006 (AR 135). It appears that plaintiff did not pursue this claim.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 1999 and met the insured status requirements of the Social Security Act through December 31, 2004 (AR 12).[3] At step two, the ALJ found that plaintiff suffered from severe impairments of degenerative disc disease and status post hemilaminectomy (AR 12). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 14). Specifically, the ALJ found that plaintiff did not meet the requirements of Listing 1.02 ("Major dysfunction of a joint(s)") because she did not have the "inability to ambulate or perform manipulative activities" and did not meet the requirements of Listing 1.04 ("Disorders of the spine") because there was "no documented nerve root compression, spinal arachnoiditis, or spinal stenosis" (AR 14).

The ALJ decided at the fourth step that plaintiff had "the residual functional capacity (RFC) to perform sedentary work with a sit/stand option" (AR 14). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 15). At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 16). Specifically, plaintiff could perform 4,000 jobs in the regional economy such as: information clerk (2,000 jobs); order clerk (1,000 jobs); and hand packager (1,000 jobs) (AR 16). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act at any time through December 31, 2004, her last insured date (AR 16).

---

[3] The ALJ found that plaintiff worked in 2007 and 2008 as a restaurant hostess at the Red Geranium Cafe, with an earnings record in 2007 of $4,447.70 (AR 12, 24-25).

## III. ANALYSIS

Plaintiff raised three issues on appeal:

**A. The ALJ failed give good reasons as required by 20 C.F.R. § 404.1527(d)(2) to the weight given to Dr. Wolschleger's opinion because the ALJ did not address this opinion in his written decision.**

Joseph M. Wolschleger, M.D., was plaintiff's primary care physician.[4] The record reflects that plaintiff was treated extensively by a physician's assistant, Monica J. DeLaney, PA-C. (AR 175-259). Plaintiff saw Dr. Wolschleger in February, May, July and October 2000 (AR 228, 231-32). The doctor's records do not reflect back pain, but discuss plaintiff's weight and stress. Plaintiff relies on Dr. Wolschleger's opinions expressed in a "Claimant's Supplemental Statement" to UnumProvident dated March 25, 2004 (AR 282). In this statement, the doctor identified plaintiff's primary diagnosis as "chronic low back pain," with the following restrictions, "[n]o heavy lifting, no bending, no twisting, can function to best of her ability" (AR 282).

The ALJ did not address Dr. Wolschleger by name, referring only to a physical examination on March 25, 2004 which showed "pain on range of motion, no neurological deficits, but problems with straight leg raise on left" (AR 14). The ALJ's discussion refers to an examination by Ms. DeLaney (AR 239-40). The ALJ then mentioned the doctor's diagnosis of chronic lower back pain and his restriction to no heavy lifting and no bending or twisting as set forth in the UnumProvident statement (AR 14, 282). The ALJ's decision referred to the opinions of two other treating sources by name, Dr. Rish Iltea and Dr. Jennifer Cory (AR 15). The ALJ did not address Dr. Iltea's opinion that plaintiff could perform a limited range of light work, other than to reject it

---

[4] The court notes that plaintiff's brief contains multiple spelling variations of the doctor's surname.

5

because the doctor failed to provide a function by function analysis (AR 15). The ALJ did not address Dr. Cory's report in any detail other than to reject it as inconsistent with the medical record (AR 15). In this regard, Dr. Cory expressed an opinion on March 4, 2008 (more than three years after plaintiff's last insured date), indicating that plaintiff could sit, stand and walk only a total of five hours in an eight-hour workday, and had numerous restrictions (e.g., never climb, never operate heavy machinery, occasionally twist/bend/stoop, occasionally reach above shoulder level, and occasionally lift up to 10 pounds) (AR 274).

Plaintiff contends that the ALJ improperly evaluated Dr. Wolschleger's opinion as a treating physician. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary*

6

*of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the ALJ's failure to mention Dr. Wolschleger's name in the opinion indicates that he either overlooked it or rejected it. *See Bowen v. Commissioner of Social Security*, 478 F.3d 742, 747 (6th Cir. 2007) (ALJ failed to comply with the good reasons requirement of § 1527(d)(2) when he failed to mention the psychologist who treated the claimant for over three years and submitted an RFC assessment in the case). Plaintiff also relies on *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007) (cautioning that the "good reasons" standard requires the written ALJ opinion to be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight") (quoting *Wilson*).

Defendants contend that the ALJ was not required to give reasons because he essentially adopted the limitations as set forth by Dr. Wolschleger in his March 25, 2004 opinion. *See Wilson*, 378 F.3d at 547 (when "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant"). The court disagrees. The ALJ found that plaintiff had the RFC to perform "sedentary work with a sit/stand option" (AR 14). While the ALJ limited plaintiff to the sedentary exertional level (i.e., lifting no more than 10 pounds at a time), there is no mention of the

7

other limitations expressed in Dr. Wolschleger's March 25, 2004 opinion, such as no bending or twisting.

Under these circumstances, the ALJ failed to articulate good reasons for not adopting Dr. Wolschleger's opinion that plaintiff cannot bend or twist as required under 20 C.F.R. § 404.1527(d)(2). *See Wilson,* 378 F.3d at 545. Here, the ALJ identified 4,000 jobs that could accommodate plaintiff's limitations. Assuming that the ALJ adopted Dr. Wolschleger's additional limitations, it is certainly possible that some of the identified would be eliminated. Accordingly, this matter should reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate Dr. Wolschleger's opinion that plaintiff cannot bend or twist and re-evaluate plaintiff's RFC accordingly.

### B. The ALJ should not have given considerable weight to the opinion of Dr. Walter Miller.

Plaintiff contends that the ALJ improperly gave considerable weight to Dr. Walter Miller, the medical expert (ME) who testified at plaintiff's administrative hearing that plaintiff had lower back problems (but no neuropathy), and spondylosis in 2004 (AR 14-15). In reaching this determination, the doctor noted that a follow up MRI was not completed to determine the cause of her pain during the relevant time period (on or before her last insured date of December 31, 2004):

> [I]n regard to meeting the listing or equaling the listing, she doesn't have any neuro-anatomical pain radiation into the legs, such as the type of pain you get with a neurocompressive effect on the sciatic nerve or the branches of it that emanate from the back. We don't have any follow-up MRI to show that there is a persistent compressive effect of the nerve roots. So I think the problem that she has in her lower back is basically pain secondary to the surgery, but it's not depicted in any special ways you can ascertain the cause.

(AR 51). The ME further testified that, in his opinion, plaintiff could perform sedentary work during the relevant time period:

> The status of this lady at this time is that I don't see any extremity problem. I think the problem is due to her back, and I think sedentary work is possible at this time, back in that timeframe of '04. At the present time [December 2, 2008], she seems to relate that she can't do anything now. She can't function now, but this is beyond the time that we're looking at. The time we're looking at was, was earlier.

(AR 51).

The ME continued:

> Well, I mean, when I refer to [current imaging studies], I'm thinking of something that would relate to explaining localized back pain in the region, and she has some compression. But you know, when you deal back in '04 and this is '08, that's four years ago. And we don't have anything to show four years ago what the cause of her pain was at that time. And that cause of pain at that time would be spondylolosthesis, localized back pain, extensive arthritis of the back, narrowing of the neural foramina and the nerves come off the spinal cord, that sort of thing that would show us that there's some residual neurocompressive effect that would prevent her from functioning. A lost of the symptoms that she's relating now are in real time, and I understand that. But that's not for the period we're looking.

(AR 52-53).

Plaintiff contends that Dr. Miller's opinion is not supported by evidence, pointing to his testimony that "we don't have anything to show four years ago what the cause of her pain was at that time" (AR 52). Defendant contends that Dr. Miller's opinion is supported by plaintiff's medical records during the relevant time period, pointing out that plaintiff complained of back problems during only about one-half of her visits to Dr. Wolschleger and Ms. DeLaney (AR 209-10, 213-14, 216-17, 222-24, 227, 230-31, 233-34, 241-42, 292, 294).

Based on this record, the ALJ could properly rely on the opinion expressed by the ME regarding plaintiff's condition as it existed during the relevant time period of 1999 through 2004, which was based in part on the absence of objective medical evidence of a disabling back condition. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("[t]he ALJ could properly rely

9

on the testimony of the non-examining medical expert physicians "in order to make sense of the record").

Accordingly, plaintiff's claim of error should be denied with respect to Dr. Miller.

### C. Substantial evidence does not support the RFC assessment of the ALJ.

Plaintiff contends that the ALJ's RFC determination was improper because it did not consider the effects of plaintiff's mental impairments and the need to elevate her legs to relieve pain. The RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

#### 1. Mental impairment

Plaintiff points to two records to support her claim that she suffered from a disabling mental impairment on or before December 31, 2004: she was very irritable, emotional and "teary" during an appointment in August 2001 (AR 225) and she seemed "a little bit depressed" during an office visit in December 2001 (AR 223). Plaintiff's counsel states that "[n]ew evidence that was submitted to the Appeals Council, but is absent from administrative record from Dr. Corry [sic], references she was in Pine Rest Mental Hospital for depression." Plaintiff's Brief at pp. 11-12. A footnote in counsel's letter to the Appeals Council indicates that this evidence reflects plaintiff's condition long after her last insured date, referencing "new medical from Dr. Cory [sic] dated 10/21/08" (AR 343).

There is no indication in the record that plaintiff ever claimed a mental disability on or before her last insured date of December 31, 2004. Plaintiff's claim as processed by the agency did not involve any mental component (AR 144). Furthermore, counsel's opening statement to the ALJ summarized plaintiff's claim as purely a physical disability, "[s]o really, what this boils down to is a failed back surgery kind of case where this lady has had lots of problems since surgery number one, and hasn't worked since about 8/1/1999" (AR 24). Plaintiff's counsel did not address the issue of a mental impairment until filing a letter with the Appeals Council on May 7, 2009, and then referred to two observations in medical examinations back in 2001 and a report not in the administrative record regarding her mental condition in 2008 (AR 342-45).

Based on this record, there was no reason for the ALJ to address an alleged mental impairment at the administrative hearing. Accordingly, plaintiff's claim that the ALJ erred in failing to include a mental component in the RFC determination should be denied.

### 2. Plaintiff's need to elevate her feet

Finally, plaintiff testified that every time she came home from her job as a hostess at the Red Geranium Cafe (i.e., in 2007 and 2008), she would need to recline in a chair with her feet elevated (AR 32-36). While the ALJ posed a hypothetical question to the vocational expert assuming this condition, the ALJ makes no mention of this testimony in the decision. The court considers this to be either no error or a harmless error. Plaintiff's testimony involved her condition years after her last insured date. While this testimony may be relevant to plaintiff's condition in 2007 and 2008, and would help to explain her unsuccessful attempts to work at that time, it does not reflect her condition during the relevant time period. *See Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of plaintiff's eyesight in August 1996

is not relevant to plaintiff's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 8-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of plaintiff's condition in 1987 not material to her condition in 1985); *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). The ALJ did not err in failing to address this claim.

**IV. Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Dr. Wolschleger's opinion consistent with this report.

Dated: February 1, 2011                /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).